LOTTINGER, Judge.
This is a suit to rescind the sale of a house and two lots on grounds of lack of capacity, lack of consent and lesion beyond moiety. The plaintiff, 87-year-old Sarah J. Carter, obtained a judgment at trial rescinding the sale. From the judgment ordering the return of the $3,000.00 purchase price stipulated in the act of sale, the defendants, Reverend Alvin Sims and Rosalee P. Sims, have appealed.
THE FACTS
On October 10, 1978, the plaintiff and defendants signed an act of cash sale *1163 whereby Mrs. Carter sold her Baton Rouge residence of 20 years to the Simses for a stated consideration of $3,000.00 cash. In the act of sale, Mrs. Carter reserved a usu-fruct for life. In connection with the act of cash sale, Mrs. Carter and the Simses executed an authentic act which stated that as an additional consideration for the property the Simses agreed to care for and supply all the needs of Mrs. Carter for the rest of her life. The Simses also claim they paid Mrs. Carter an additional cash consideration of $2,000.00 for the property but, at Mrs. Carter’s behest, did not list this amount in the act of sale. To prove their contention about the additional cash consideration, the Sims-es introduced a bank statement which showed that a total of $4,620.00 was deposited in the account of Mrs. Carter on October 11, 1978, the day after the sale. They contend that since the evidence showed that Mrs. Carter had no source of income other than a $150.00 per month old age pension and/or a $160.00 per month social security payment, the bank statement and their testimony shows conclusively that a total of $5,000.00 was paid for the property.
A real estate appraiser who was qualified as an expert at trial testified that the house and two lots had a market value of $19,-500.00 at the date of sale. He used the income approach and market value approach to arrive at the value.
Dr. Harry S. Morris, a general practitioner who has treated Mrs. Carter since 1946, testified that the plaintiff was suffering from senile dementia, which results from aging and which causes a decrease in mental faculties. Dr. Morris testified that it was his opinion Mrs. Carter was not capable of understanding all the consequences of the sale in 1978. He said she had the capability to handle perhaps simple affairs but more complex matters could well be beyond her capability.
Mrs. Carter testified that she never wanted to sell her house because she did not have a place to stay. She remembered signing the papers in the lawyers office but she claims she did not know what she was signing. She did not remember the supplemental agreement in which the Simses agreed to take care of her for the rest of her life. She contended that the Simses never paid her anything for the house.
Several long time friends of Mrs. Carter testified that they routinely brought her meals, took her on errands and generally looked after her welfare.
THE TRIAL COURT’S DECISION
After hearing the testimony of Dr. Morris and of Mrs. Carter, the trial court held that the plaintiff lacked the mental capacity to consent to the act of cash sale. The court recognized that a person may be mentally and physically weakened by disease and still be capable of contracting, but he added that “the law extends its sheltering arms over such persons to the extent of scrutinizing contracts made by them and protecting them from imposition, undue influence, improper advantage and other fraudulent conduct by persons dealing with them.” The court further stated that even if it had found Mrs. Carter had the capacity to consent to the contract, it would have nonetheless voided the sale on the grounds of lesion beyond moiety. La.C.C. arts. 1860, 1861(2), and 1863.
On the issue of how much money the plaintiff had to return to the Simses, the court held that only the $3,000.00 listed in the act of cash sale had to be returned because he found the Simses evidence of the other consideration unconvincing. He found the Simses failed to prove their claim by a preponderance of the evidence.
SPECIFICATIONS OF ERROR
On appeal to this court, the Simses contend that the trial court erred: (1) in finding that Mrs. Carter was incapable of consenting to the contract; (2) in finding that the contract should have nonetheless been voided because of lesion beyond moiety; and (3) in failing to require Mrs. Carter to return the total of $5,000.00 as the purchase price the Simses paid for the property.
Because of our finding that the sale should be invalidated because of lesion be *1164 yond moiety, we need not address the issues of capacity and consent.
LESION BEYOND MOIETY
Under La.C.C. art. 1861 the sale of an immovable piece of property can be voided by the vendor “if the price given is less than one-half of the value of the thing sold: . .. . ” La.C.C. art. 1862 adds that lesion can only be alleged for sales of corporeal im-movables.
The Simses claim that the alleged $5,000.00 they paid in cash plus the obligation they incurred to take care of Mrs. Carter for the rest of her life were sufficient to take this transaction out of the realm of lesion beyond moiety. They also contend that the plaintiff failed to prove by clear and convincing evidence the fair market value of the property.
After laying the background for his determination of value, the expert real estate appraiser testified unequivocally that the market value of the property at the date of sale was $19,500.00. There was no testimony to contradict or weaken this market value appraisal. The trial court apparently believed the real estate expert, and our thorough review of the testimony convinces us that there was no error made in this respect. Because of the advanced age of Mrs. Carter and the relatively low rental value of the property, the value of the life usufruct along with the value of the Sims-es’ obligation to take care of Mrs. Carter would in no way come near the amount necessary to prevent the sale from being rescinded because of lesion beyond moiety.
As to the Simses’ claim that they should receive $5,000.00 back from Mrs. Carter, their evidence is simply unconvincing that they paid an additional $2,000.00 consideration above and beyond that which was quoted in the act of cash sale. The trial court, who viewed the witnesses directly and evaluated their testimony, did not find that the Simses proved their claim by a preponderance. The fact that the savings account record of Mrs. Carter indicates that on October 11,1978, one deposit of $3,020.00 and another deposit of $1,600.00 were made does not, in our minds, show with the requisite degree of certainty that the Simses paid an additional $2,000.00 consideration for the property. They produced no receipts to substantiate their claim and no other witnesses could or would corroborate their testimony.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed. The Simses will pay the cost of this appeal.
AFFIRMED.